FIREMEN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY, complainants,

*v.*

ELIAS A. WILKINSON et al., defendants.

1. The giving of a bond as collateral security to a subsisting bond and mortgage, does not, *per se,* and in the absence of any ancillary agreement, operate as a suspension of the right to prosecute such bond and mortgage.

2. A surety of the mortgagor will not be released by the mere giving of such collateral bond.

---

Ebenezer M. Crosby executed a bond and mortgage to the complainant to secure $1,000, and then conveyed the premises

to David B. Crockett, who, as part of the consideration, assumed the payment of said mortgage. Crockett mortgaged, in his turn, the premises so purchased, and this mortgage was subsequently foreclosed without the first mortgagee being made a party. At the sheriff's sale, in this proceeding, Wilkinson, the respondent, became the purchaser, and thereupon, as the bill states, made his "collateral bond" to the appellant to secure the payment of the same indebtedness secured by the mortgage first above mentioned, being in the penalty of $2,000, "conditioned for the payment of $1,000 in one year from its date, with interest at seven per cent. per annum, payable half-yearly, together with all taxes." Wilkinson then conveyed the premises to Joseph Liebstein, who assumed the payment of the mortgage as part of the consideration-money, who conveyed to Sarah H. Riker, on similar conditions, who conveyed to Louis Stern, who also assumed "the payment of said mortgage." In addition to this assumption, Stern, after his purchase, executed to the complainant "his collateral bond" "to secure the payment of said mortgage indebtedness, said bond being made in the penal sum of $2,000, conditioned for the payment of $1,000 in one year from the date thereof, with interest thereon."

The bill was for the foreclosure of the mortgage and for a decree for the deficiency against Crosby, Crockett, Wilkinson, Liebstein, Riker and Stern.

On appeal from a decree of the chancellor, based on the following opinion of Amzi Dodd, esq., advisory master:

Bill filed February 25th, 1880, to foreclose a mortgage for $1,000, dated September 2d, 1870, made by Ebenezer M. Crosby and wife to the complainants, to secure Crosby's bond of same date and amount. Under the foreclosure of a subsequent mortgage, without reference to the prior one by Crosby, the mortgaged premises were conveyed by the sheriff to Elias A. Wilkinson, by deed of April 4th, 1873, subject to the first mortgage of $1,000. Wilkinson then gave to the complainants his bond, dated May 2d, 1873, conditioned for the payment of $1,000, payable in one year, being the same debt secured by the mort-

gage. By deed of March 30th, 1874, Wilkinson and wife conveyed the premises to Joseph Liebstein, subject to said mortgage, which Liebstein assumed, by said deed, to pay and discharge, as so much of the consideration in the conveyance to him. By deed of April 27th, 1874, Liebstein and wife conveyed the premises to Sarah H. Riker, subject to said mortgage, which she assumed in like manner to pay and discharge. By deed of August 14th, 1874, Sarah H. Riker conveyed the premises to Louis Stern, subject to the mortgage which Stern in like manner assumed to pay and discharge. Stern, as such owner, gave to the complainants his bond, dated March 1st, 1875, conditioned for the payment of $1,000 in one year thereafter, the said moneys being declared in the bond to be the same mentioned in the bond of Crosby aforesaid, dated September 2d, 1870, and the bond of Stern collateral thereto.

The bill prays a decree for deficiency against Stern, Riker, Liebstein, Wilkinson and Crosby.

Wilkinson is the only answering defendant.

The only disputed point is the liability of Wilkinson to a decree for deficiency. At the argument, his liability was controverted, on the ground that Stern having in 1874 become the purchaser of the mortgaged premises, and having assumed to pay the mortgage debt as so much of the purchase-money, the complainants extended the payment of such debt by taking Stern's bond of March 1st, 1875, payable in one year, and thereby discharged Wilkinson, who was in equity only a surety, by giving time to Stern, who was the principal.

The jurisdiction of equity to decree the payment of deficiency by Wilkinson is derivable only from the statutory enactment of 1866 (*Rev. p. 118* § *76*), as follows:

" That it shall be lawful for the chancellor, in any suit for the foreclosure or sale of mortgaged premises, to decree the payment of any excess of the mortgage debt, above the net proceeds of the sales, by any of the parties to such suit who may be liable, either at law or in equity, for the payment of the same."

By an act approved March 12th, 1880 (*P. L. of 1880 p. 255*), this enactment was repealed as to foreclosure suits thereafter

commenced, but the repealer does not apply to the present suit begun February 25th, 1880. No doubt was intimated at the argument as to the competency of this legislative addition to the jurisdiction of chancery, nor as to whether, under the terms of the enactment, it was made the duty of this court to enforce legal obligations not previously within the scope of its cognizance.

The single question presented for decision does not seem to me one of difficult solution. I am of opinion that Wilkinson was discharged in equity by the action of the complainants, and that for that reason they are entitled to no decree against him for deficiency.

By conveyance of August 14th, 1874, from Sarah H. Riker to Stern, the latter assumed to pay the mortgage, and so became in equity the principal debtor, and Wilkinson his surety. *Klapworth* v. *Dressler, 2 Beas. 62; Hoy* v. *Bramhall, 4 C. E. Gr. 563; Crowell* v. *Hospital of St. Barnabas, 12 C. E. Gr. 650.*

This being the relation between Wilkinson and Stern, the holders of the debt and mortgage security took the bond of March 1st, 1875, by which the moneys secured thereby are expressly declared to be the same secured by their mortgage, and by which, without Wilkinson's consent, they extended payment by Stern for one year. How can it be said that this did not bar the complainants from foreclosing the mortgage during the extended time, and if it did, how can it be said that his suretyship continued? To hold that it did, would be, I think, in manifest violation of the settled principles of suretyship, too well established and familiar to call for citations to support them.

The case of *Calvo* v. *Davies*, decided by the court of appeals of New York, in 1878, and reported in *73 N. Y. 211*, is substantially the same as this. Calvo held the bond and mortgage of Davies; Davies conveyed the mortgaged premises to Leslie, who assumed in the conveyance to pay the mortgage. Calvo then made an agreement with Leslie, extending the time for the payment of the principal sum, with the express understanding that the bond and mortgage should remain in every other respect unaffected by said agreement. It was held by the court that the mortgage

could not be enforced during the time covered by the agreement, either by Calvo, the holder, or by Davies, the original debtor and obligor; that Davies, on paying the debt, would be entitled to be subrogated to the security, but he would stand in the place of the creditor, and would take the mortgage subject to the agreement. It was said that it would be a forced and unnatural construction to hold that the parties designed to reserve to the creditor a right to proceed at once against Davies, which would enable Calvo to defeat the sole purpose of the agreement.

In the present case, no indication exists of any intention to reserve the right of Wilkinson, the surety. Nothing can be inferred in that direction from the words in the bond of Stern stating it to be collateral to the bond of Crosby, the original obligor and mortgagor. Where an additional or collateral secu- rity is given by the principal debtor, and the time thereby extended for the payment of the original debt, it must clearly appear that the rights of the surety were reserved, otherwise the security will be discharged. There is no authority to the contrary of this, and very many in its support. The supposition that the complainant, or the defendant Stern, intended or expected, when the latter executed his bond agreeing to pay the principal secured by the mortgage in one year from date, with interest half-yearly, that Wilkinson was to have the reserved right to pay the mortgage and enforce it at once against Stern, is without any support in the proofs, and altogether unreasonable and improbable, in view of the circumstances and purposes of the parties.

*Mr. H. C. Pitney,* for appellant.

The learned vice-chancellor held Wilkinson discharged from his express legal liability to pay the mortgage debt in this cause, on the ground that complainant had given time to Stern, who occupied the position of principal debtor for the amount, thereby depriving him, Wilkinson, of his right as surety to proceed at once against Stern.

The principle upon which sureties are discharged in such cases is that the creditor has intentionally done some act which has

deprived the surety of some remedy or indemnity which he had in the premises, and it was assumed by the learned vice-chancellor that complainant had extended the time of payment of the debt by the principal debtor, and had thereby deprived Wilkinson of the right to proceed against the property pending the extension.

I. The complainant did not extend the time of payment to Stern, the principal debtor.

The "giving of time" in such a case must be accomplished by a valid contract for a sufficient consideration between the creditor and debtor, by which the creditor, for a sufficient consideration, agrees to forbear and give time for payment for a definite period to the debtor.

A mere agreement, without consideration, is insufficient.

An agreement to give time generally, and not for any definite period, is insufficient.

A mere giving of time without agreement is insufficient.

The agreement must be such as to furnish a defence to an action to enforce and collect the indebtedness, otherwise it is harmless and does not injure the surety.

There must be another element in the transaction in order that the surety may avail himself of it as a defence, viz., the creditor must have known at the time that the relation of principal and surety existed, and be conscious that his act will tend to injure the surety.

*Pring* v. *Clarkson, 1 B. & C. 14; Shubrick* v. *Russell, 1 Desauss. 315; Green* v. *Warrington, 1 Desauss. 430; Two-penny* v. *Young, 3 B. & C. 103; Emes* v. *Widdowson, 4 Carr. & Payne 151; Wyke* v. *Rogers, 1 De G., McN. & G. 408; Overend, Gurney & Co.* v. *Oriental Financial Cor., E. & I. App. (7 H. of L.) 348; Swire* v. *Redman, L. R. (1 Q. B. D.) 536; Niemcewicz* v. *Gahn, 3 Paige 613, 11 Wend. 312; Elwood* v. *Diefendorf, 5 Barb. 398; Remsen* v. *Graves, 41 N. Y. 471; Cary* v. *White, 52 N. Y. 138; United States* v. *Hodge, 6 How. 279; Weakly* v. *Bell, 9 Watts 273; Bank* v. *Potius, 10 Watts 148; Stow* v. *Reformed Church, 39 Pa. St. 226; Wade* v. *Staunton, 5 How. (Miss.) 631; Brengle* v. *Bushey, 40 Md. 141; S. C.,*

*17 Am. Rep. 586; Hays v. Wells, 34 Md. 512; Austin v. Curtis, 31 Vt. 64.* In this case all the authorities on both sides are cited and elaborately discussed. The case is well worthy of examination. *Brandt on Suretyship §§ 319, 320; Baylies on Sureties 258,* and cases cited; *2 White & T. Lead. Cas. Eq.* (ed. 1877) 1915, 1916; *Pitman on Principal and Surety \*202; Morgan v. Martein, 32 Mo. 438, 444; Weller v. Ranson, 34 Mo. 362; Paine v. Voorhees, 26 Wis. 522; Burke v. Cringer, 8 Tex. 66; Adams v. Logan, 27 Gratt. 201.*

II. In order that the giving of time should have the effect of discharging a surety, it must appear affirmatively that the creditor had notice of such relation. *Niemcewicz v. Gahn,* and *Elwood v. Diefendorf; Kaighn v. Fuller, 1 McCart. 419; 2 Am. Lead. Cas. (ed. 1857,) 411; 2 White & T. Lead. Cas. Eq. 1918; Baylies on Sureties 256; Brandt on Suretyship § 328; Hollier v. Eyre, 9 Cl. & Fin. 1, 51, 52; Poole v. Harradine, 7 E. & B. 431; Greenough v. McClelland, 2 E. & E. 424; Hoy v. Bramhall, 4 C. E. Gr. 563 571, 572; Swuire v. Redman, L. R. (1 Q. B. D.) 541, 542.*

III. Wilkinson was not a surety for Stern in such a sense as to entitle him to find fault with the dealings between complainant and Stern. Whatever of the relation of principal and surety existed between Stern and Wilkinson, arose out of the peculiar circumstances of the assumptions of the mortgages, and did not result in changing Wilkinson's relations with complainant. The relations between complainant and Wilkinson are determined by the contract between them, viz., Wilkinson's bond. *Meyer v. Lathrop, 10 Hun 66, 73 N. Y. 315.*

*Mr. Frederic Adams,* for appellant.

I. The construction of the bond of Louis Stern.

The question here is this—

Does the bond of Stern contain a contract by the company to extend the time for paying the mortgage?

It is impossible to read the bond of Stern without seeing two

things : *first,* that it is the contract of Stern rather than the contract of the company ; and *secondly,* that it does not purport to be a contract extending the time for the payment of a mortgage. It professes to be an obligation collateral to a certain bond and mortgage, but it nowhere declares an intention to change the terms of that bond and mortgage. Its function is to fortify, not to alter. On its face it is an instrument given for no other purpose than to further assure the mortgagees, whose mortgage was long past due, by adding to their securities the right to resort, after one year, to the personal responsibility of the owner of the equity of redemption. There is nothing to show that the company meant to change the terms of the mortgage, or that Stern wished them to do so, or that either of them had any intent,· which is not fully expressed in the bond.

The court are referred on this point to the authorities, which are fully cited and discussed in the brief of. the senior counsel for the appellants.

II. If the court should be of opinion that it is not so, but that the bond of Stern is an agreement on the part of the company to extend the time for paying the Crosby mortgage until one year after the date of Stern's bond, then it will become necessary to consider the further question as to the effect of this bond upon the respective rights and obligations of the company and ·Wilkinson.

This is a question not so much of law as of the application of law.

It is thoroughly settled that a contract by which a surety is bound, cannot be altered in any material respect by the creditor and the principal debtor, even to the apparent advantage of the surety, without discharging the latter, unless he consents to the alteration. This rule is necessary for the protection of the surety ; the peculiarity of the case being that the creditor and the principal debtor have the legal power to change a contract on which another person is liable. If the responsibility of the latter survives such alteration he must stand to a contract by which he never agreed to be bound. The law avoids this unjust

result by making the consent of the surety a prerequisite to the continuance of his liability under the new contract, and it refuses to go into the question whether the new contract is better or worse for the surety than the old one.    It is enough if the original contract has been altered.

The elements of a case to which this rule is applicable are these :

There must be three persons, a creditor, a principal debtor, and a surety, and they must be connected by the contractual tie of a common agreement, which the creditor and the principal debtor have the power to alter, and which they do alter, so as to change the situation of the surety.    *Miller* v. *Stewart, 4 Wash. C. C. 26, 9 Wheat. 680 ; Samuel* v. *Howarth, 3 Meriv. 271 ; Manufacturers Bank* v. *Dickerson, 12 Vr. 448.*

The question is how far this familiar legal rule applies to the equities of such a case as this.

Three things strike the mind at once. .

*First.* The question is new in this state.    The rule is, therefore, to be cautiously applied.

*Secondly.* The parties are not connected by the contractual tie of any common agreement.    Wilkinson and Stern are joined together by a mere concatenation of equities, which define their rights *inter sese,* but do not, necessarily, measure their responsibility to the complainants.

See the cases cited by the advisory master.

*Thirdly.* The contract which Wilkinson seeks to escape from is not his assumption, but is his bond.    The complainants hold Wilkinson exactly as they hold Crosby, not through a roundabout subrogation, but on his specialty given directly to them. If he had merely assumed the payment of the mortgage the case would be different.    The right of the company to hold Wilkinson would then be not original, but derivative ; secondary, not primary—a mere equity, arising out of the acts of third persons, and inuring to the benefit of the complainants, by reason of their equitable claim to enforce the collateral securities of their debtor, and not a full legal right, created and defined by a contract under seal, to which they are parties.    Such a mere equity can, without

the consent of the mortgagee, be extinguished by reconveyance, as in *Crowell* v. *Hospital of St. Barnabas, 12 C. E. Gr. 650,* or by mutual releases, as in *Youngs* v. *Trustees for the Support of Public Schools, 4 Stew. Eq. 290.* See, also, *Meyer* v. *Lathrop, 10 Hun 66.*

III. The respondents do not show that the company had notice that Stern and Wilkinson were principal and surety.

Where a surety claims relief on the ground that, without his consent, the creditor has given time to the principal debtor, he must show, in order to entitle himself to exemption from liability, that the fact of suretyship was communicated to the creditor. The privilege of the surety is a mere equity, and binds only those who have notice of its existence. *Kaighn* v. *Fuller, 1 McCart. 419.*

Actual notice or knowledge there was none. Nor was there constructive notice, unless it arose from the record, and from Stern's declaration to the treasurer of the company that " he had bought the property." It may be said that this put the company on inquiry, and brought them within the rule that possession of land is notice of the possessor's title, and that notice of a deed is notice of its contents. *Van Keuren* v. *Central R. R. Co. of N. J., 9 Vr. 167; Smallwood* v. *Lewin, 2 McCart. 60*

But there are two answers to this, either of which is satisfactory.

*First.* The relation of the parties was not such that inquiry was the duty of the company. The record of a deed is notice only to those who claim through or under the grantor. *Losey* v. *Simpson, 3 Stock. 246.* A mortgagee, as such, is not bound to follow the title of his mortgagor. *Cogswell* v. *Stout, 5 Stew. Eq. 240.* The attitude of the company is analogous to that of the holder of a prior mortgage, as to whom it is well settled that the recording of a second mortgage will not be constructive notice of its existence. *Blair* v. *Ward, 2 Stock. 126; Vanorden* v. *Johnson, 1 McCart. 376; Hoy* v. *Bramhall, 4 C. E. Gr. 572; Ward's Exrs.* v. *Hague, 10 C. E. Gr. 397; Woodward* v *Woodward, 1 Stew. Eq. 124.*

Firemen's Insurance Co. of Newark *v.* Wilkinson.

But, *secondly,* even if the company are chargeable, by reason of Stern's verbal declaration of ownership, with notice of his assumption, this falls short of knowledge that Stern was liable as principal, and, much more, that Wilkinson was bound as surety. To make the promise of a grantee to pay a mortgage on land conveyed to him available to the mortgagee, it must be made to a person who is himself liable for the mortgage debt. *Wise* v. *Fuller, 2 Stew. Eq. 257 ; Norwood* v. *De Hart, 3 Stew. Eq. 412.*

The late, well-considered case of *Cogswell* v. *Stout, 5 Stew. Eq. 240,* shows that the theory of constructive notice is in disfavor. Indeed, when carried to the length which the exigency of the respondent's case requires, this doctrine has a grimly humorous aspect. It is a familiar maxim that ignorance of the law, so common among lawyers, excuses no layman, but it has not hitherto been supposed that knowledge of the facts is inexcusable, or that a court of equity will, by a course of artificial reasoning, impute to a person a knowledge of his rights, which is not in the mind, and then, because of that knowledge, take those rights away.

*Messrs. Guild & Lum,* for respondent.

The bill of complaint shows that while the appellants (who were the complainants below) held the matured bond of the defendant Wilkinson, secured by mortgage, the complainants took from Louis Stern, who had purchased the premises and had assumed payment of the mortgage, his bond for the same debt, payable in one year thereafter, with interest &c.

The deed to Stern, at the time of taking the bond, was duly recorded, and Stern (as appears by the evidence of complainants' secretary) had notified the complainants that he had purchased the premises.

The bill alleges " and your orators expressly charge that by the execution and delivery of said collateral bond, the said Louis Stern became bound at law and in equity to your orators, to pay the amount due and to become due on said mortgage."

Firemen's Insurance Co. of Newark *v.* Wilkinson.

The taking of the bond was without the knowledge or consent of Wilkinson.

Complainants seek a decree for any deficiency &c., against Wilkinson and Stern.

We contend that, by the taking of Stern's bond, the time of payment of the mortgage debt was extended, to the prejudice of Wilkinson, who then occupied the position of a surety for the debt, and that Wilkinson was thereby discharged from liability for the debt.

The vice-chancellor (Dodd) so advised, and from the decree advised by him this appeal is taken

I. Wilkinson was surety and Stern the principal debtor. *Klapworth* v. *Dressler, 2 Beas. 62; Stiger* v. *Mahone, 9 C. E. Gr. 426; Crowell* v. *Hospital of St. Barnabas, 12 C. E. Gr. 650; Jones on Mort. 742; Calvo* v. *Davies, 8 Hun 222, 73 N. Y. 211,* and cases cited.

II. Complainants were charged with notice of the assumption. The record showed it, and this was sufficient, taken together with notice of Stern's purchase. *Calvo* v. *Davies, 8 Hun 222.*

Stern informed them that he had purchased the mortgaged premises, and notice of the deed was notice of its contents. *Wade on Law of Notice § 10,* and cases cited; *Booth* v. *Barnum, 9 Conn. 286; Hall* v. *Smith, 14 Ves. 426; Clements* v. *Welles, L. R. (1 Eq.) 200; Chesterman* v. *Gardner, 5 Johns. Ch. 29; Van Doren* v. *Robinson, 1 C. E. Gr. 256; Smallwood* v. *Lewin, 2 McCart. 60; Story's Eq. Jur. 400; 4 Kent's Com. 179; Daniels* v. *Davidson, 16 Ves. 249; Spinner* v. *Walsh, 10 Irish Eq. 380; Fielder* v. *Slater, L. R. (7 Eq.) 523; White* v. *Foote, 102 Mass. 375; Le Neve* v. *Le Neve, 2 Lead. Cas. Eq. 160 n.; 2 Sugden on Vendors (7th Am. ed.) 559 § 63.*

Inquiry became a duty when Stern informed complainants of his purchase. This was sufficient to put a prudent man upon inquiry to ascertain whether there were persons who had acquired rights which were prejudiced by the extension.

Where inquiry is a duty, the party bound to make inquiry is

affected with all the knowledge which he would have got had he inquired. *Cordova* v. *Hood, 17 Wall. 1.*

III. The taking of the bond operated to bind Stern in law for the payment of the debt, and necessarily as an extension of the time for one year.

No express agreement was necessary to this end, nor need such an agreement be proved by direct evidence.

The law operating on the act of the parties (the complainants and Stern) created the duty and implied the promise and obligation. *Brandt on Suretyship 304,* and cases cited ; *Hill* v. *Bostick, 10 Yerg. 410 ; Union Bank* v. *McClurg, 9 Humph. 98 ; Lea* v. *Dozier, 10 Humph. 447.*

It has been repeatedly held that taking a new note from a debtor by the holder of a promissory note payable at a future date, suspends the right of action upon the original demand until the maturity of the last-mentioned note, and the surety upon the same, not assenting thereto, thereby becomes discharged from liability. *Fellows* v. *Prentiss, 3 Denio 512 ; Bangs* v. *Mosher, 23 Barb. 478 ; Dorlan* v. *Christie, 39 Barb. 610 ; Albany City Ins. Co.* v. *Diefendorf, 43 Barb. 444 ; Place* v. *McIlwain, 38 N. Y. 96 ; Hubbard* v. *Gurney, 64 N. Y. 457 ; Brandt on Suretyship 316 ; Kitty* v. *Jenckins, 1 Holt 73, 74 ; Elwood* v. *Diefendorf; 5 Barb. 398 ; Appleton* v. *Parker, 15 Gray 173 ; Chitty on Bills (8th ed.) 445, 446 ; Hubbard* v. *Carpenter, Id. 520 ; Austin* v. *Darwin, 21 Vt. 38 ; Chicasau* v. *Pitcher, 36 Iowa 593.*

"If the debt for which the surety is bound is evidenced by a bond or other sealed instrument, and the creditor takes from the principal for the debt a note, bill or other negotiable instrument, which falls due after the original obligation matures, this usually amounts to an extension of time and discharges the surety." *Armestead* v. *Ward, 2 Patt. & H. 504 ; Clark* v. *Hentz, 3 You. & Coll. (Exch.) 187 ; Hooker* v. *Gamble, 9 U. C. C. P. 434, 12 Id. 512 ; Smith* v. *Crease, 2 Cranch C. C. 481 ; Bangs* v. *Mosher, 23 Barb. 478.*

The consideration was sufficient. *Brandt on Suretyship 307 ; Shaltings* v. *Johnson, 27 Ga. 564 ; Chute* v. *Pattee, 37 Me. 102.*

It mattered not that the debt was then due. *Brandt on Suretyship 312 ; Turril* v. *Boynton, 23 Vt. 142 ; Stowell* v. *Goodenow, 31 Me. 538 ; Cartin* v. *Savory, 14 Gray 528 ; Veazie* v. *Carr, 3 Allen 14.*

The time for payment of the debt being extended, the right to foreclose is, of course, supended until the expiration of the extended term.

" A verbal agreement to extend is binding, and suspends the right to foreclose, if made on good consideration." *Jones on Mort. 1190,* and cases cited. See *1 Hilliard on Mort. 233.*

"A mortgage is merely security for or incident to a debt, and follows the nature of the debt itself." " In common sense, he has ' only a pledge.' " *Hilliard on Mort. 234,* and cases cited.

" The assignment of the debt or forgiving it will draw the land after it as a consequence—nay, it would do it though the debt were forgiven only by parol." *Hilliard on Mort. 236 ;* Frich, L. K., in *Thornbough* v. *Baker, 1 Cases in Ch. 285 ; 2 Story's Eq. Jur. 1023 n.*

" The debt is the principal thing." *Matthews* v. *Walwyn, 4 Ves. 128 ; Dudley* v. *Cadwell, 19 Conn. 218.*

" Until foreclosure, or, at least, until possession taken, the mortgage remains in the light of a chose in action. It is but an incident attached to the debt, and in reason and in propriety, it cannot and ought not to be detached from its principal." Kent, C. J., in *Jackson* v. *Willard, 4 Johns. 43. "Accessorium non ducit, sed sequitur suum principale."*

Extending the mortgage extends the note. *Flanders* v. *Barston, 6 Shepl. 357.*

" The mortgage is a mere pledge or security for the debt." *Story's Eq. Jur. 1015.*

IV. Wilkinson was discharged from liability by the extension. *Brandt on Suretyship 381,* and cases cited ; *Solomon ads. Gregory, 4 Harr. 112 ; Calvo* v. *Davies, 8 Hun 222, 73 N. Y. 211 ; De Colyer on Guaranties and P. and S. 407, 408,* and cases cited ; *Thompson* v. *Bowne, 10 Vr. 2 ; Lime Rock Bank* v. *Mallen, 34 Me. 547 ; Bell ads. Martin, 3 Harr. 167 ; Gifford* v. *Allen, 3*

*Metc.* (*Ky.*) *255* ; *Wright* v. *Bartlett, 43 N. H. 548* ; *People's Bank* v. *Pearson, 30 Vt. 711* ; *Paulin* v. *Kaign, 3 Dutch. 503* ; *Huffman* v. *Hurlburt, 13 Wend. 375* ; *Oakley* v. *Pasheller, 4 C. & F. 207* ; *Stewart* v. *Parker, 55 Ga. 656* ; *White* v. *Whitney, 51 Ind. 124* ; *Myers* v. *First Nat. Bank, 78 Ill. 257* ; *Lamman* v. *Nichols, 15 Iowa 161* ; *Reynolds* v. *Weed, 5 Wend. 501* ; *Newman* v. *Finch, 25 Barb. 173* ; *Hart* v. *Hudson, 6 Duer 294* ; *Grant* v. *Smith, 46 N. Y. 97* ; *Bangs* v. *Strong, 10 Paige 11* ; *Fox* v. *Parker, 44 Barb. 541* ; *Story's Eq. Jur.* §§ *325, 326* ; *Rees* v. *Barrington, 2 Ves. Jr. 540* ; *Bellington* v. *Wagoner, 33 N. Y. 32* ; *Boyd* v. *McDonough, 39 How. Pr. 389.*

There are, however, cases which hold that giving time to the principal debtor does not operate to discharge the surety; but we submit that none of them are applicable to the case in point, but may readily be distinguished from it.

They are based upon the fact that, for special reasons, the surety cannot possibly be affected, and is not discharged from his engagement. For example :

1. Where the agreement giving time to the principal debtor is expressly made, with a reserve of remedies against the surety. *Webb* v. *Hewitt, 3 K. & J. 438.*

It has been held that to keep alive the liability of the surety, it must, as a rule, appear on the face of the instrument giving time that the rights of the surety are reserved. *Ex parte Glendenning, Buck. 517, 520.* See, also, *Boultbee* v. *Stubbs, 18 Ves. 20.*

Though it has been also held that such a reservation may be proved by parol evidence. *Ex parte Harvey, 33 L. J. (Bankr.) 26, 32.* And see *4 B. & C. 515, 516,* note (*a.*)

2. Where the effect of the agreement between the creditor and the principal debtor is to accelerate the surety's remedies as obviously as against the surety, this does not amount to an agreement giving time.

3. Besides the general rule governing all questions of this kind is, that a surety is not discharged : (*a*) if his remedies are not interfered with ; (*b*) if the agreement is made with his assent; (*c*) or if he subsequently confirms it. *Oriental Financial Corporation* v. *Overend, L. R. (7 Ch. App.) 142* ; *Samuel* v. *How-*

*arth, 3 Meriv. 272 ; Oakley v. Pasheller, 10 Bli. 548 ; Owen v. Homan, 4 H. L. Cas. 997 ; Haynes v. Lilley, cases in S. C. of Newfoundland 115 ; Wyke v. Rodgers, 1 De G., M. & G. 408 ; Smith's Man. of Eq. 84, 85 ; Calvo v. Davies, ubi supra.*

The opinion of the court was delivered by

BEASLEY, C. J.

The only question in litigation in this case is with respect to the legal position of Wilkinson, the respondent in the contro‑ versy. He has filed an answer setting up that by reason of certain circumstances, which are stated, he has been discharged from the obligation of the bond which he executed to the appel‑ lant, and by force of which a decree for deficiency is now sought against him. Those circumstances are as follows : That when he sold and conveyed the mortgaged premises, his grantee assumed the payment of the mortgage in question, and that, by such as‑ sumption, such grantee became the primary debtor, and that he, the respondent, stood in equity as his surety, and that the ap‑ pellant, having knowledge of the situation, made a subsequent arrangement with Stern, whereby the time for the payment of the mortgage debt was extended, and that such extension, upon well-known legal and equitable principles, set him free from the bond of his suretyship. If such an adjustment was consciously made by the appellant, there can be no doubt that it affords this respondent a defence to the claim now preferred against him. The surety has a vested interest in the contract between the pri‑ mary debtor and the creditor, to the performance of which he has bound himself, and that contract cannot be altered without his consent, so as to affect his equitable or legal position ; and if such modification be effected, the consequence is the exoneration of the surety from all liability. This principle is elementary and indisputable.

To this position the answer of the appellant is twofold ; first, that it, the appellant, when it made the arrangement with Stern, taking his bond for the payment of the mortgage debt, was not

aware of the stipulations of the respondent's grantees and their privies, whereby they had assumed the payment of the moneys in question, and that thereby the respondent had been converted into a surety ; and, second, that the arrangement so made with Stern, and the acceptance of his bond, had not the effect attributed to such acts, and did not alter the contract as originally made between the appellant and its mortgagor.

The first point in this response does not seem to me material. The fact that respondent's grantee assumed the payment of this mortgage, and the question whether the appellant knew of such fact when it dealt with Stern, are matters that have no legal efficacy whatever in this inquiry, the reason being that, entirely independent of such considerations, it conclusively appears, from the circumstances of the case, that the appellant was aware that the respondent stood in the attitude of a surety in this transaction. In point of fact, the respondent never had any connection with this affair except in that character. He never was primarily liable ; he always was, from the outset, secondarily liable. Grant that his, the respondent's, grantee did not assume the payment of the mortgage debt, still, the respondent stood only as surety for such debt. This was the original position of the respondent: Crosby was the owner of the property, and gave the mortgage in question to the appellant; he then conveyed to Crockett, who assumed payment of the mortgage, and executed a second mortgage, under which the premises were sold, the respondent becoming the purchaser. By such act of purchase the respondent assumed no personal responsibility with respect to the mortgage debt ; he then executed the bond to the appellant, on which a decree against him for deficiency is now demanded. The question then arises, Did this instrument impose on him the obligation of a principal debtor, or that of a surety ? That a *status* of the latter kind was created is clear from the statements of the bill of complaint. In that pleading this obligation is described as the respondent's "collateral bond to secure the same indebtedness secured by the mortgage" given by Crosby. This bond of the respondent, then, was not to constitute the primary obligation, but was to stand as collateral to

such primary obligation.   Such a secondary responsibility placed the respondent in the position of a surety to the mortgagor, and if he had been obliged, by a suit on this bond, to pay the deficiency that should have arisen on a sale of the mortgaged property, he would have had the right to be subrogated to the claim of the appellant against the mortgagor.   Possessed of such a *status,* there has been no period of time since the creation of this bond when the appellant could have extended the time for the payment of the mortgage debt without, by such act, releasing the respondent from his liability with respect to such moneys. As, therefore, by the original connection of the respondent with this business he was constituted a surety, and there is no pretence that such position was subsequently changed, there is no necessity to look into the effect of the conveyance and the assumptions contained in it, in order to ascertain his legal or equitable relationship to the appellant, emanating from that source.   That part of the argument relating to the effect of such conveyance and assumption will be discarded from the discussion as superfluous and nugatory.

The simple question, therefore, that the court is at present called upon to settle is the one that touches the effect of the Stern bond.

That instrument bears date on the 1st of March, 1875, and was given by Stern to the appellant in the penal sum of $2,000, the condition being for the payment of $1,000 and interest, in one year from date.   In its condition it is expressly declared that it is given for the "same money mentioned in a bond dated September 2d, 1870, made by Ebenezer M. Crosby to the fire insurance company," and it is further stated that "this bond executed by Stern is collateral" to the Crosby bond just mentioned.   The acceptance of this bond is the only circumstance in the case which affects this point of inquiry.   The vice-chancellor, in deciding the case in the court of chancery, came to the conclusion that the taking of this bond by the appellant, *ipso facto,* incapacitated it from at once proceeding to foreclose its mortgage, and on that account, as it altered the contract between the creditor and the principal debtor, it operated as a discharge of the

12

respondent, who was a surety of that debt.     It will be observed that this result proceeds from the adoption of the proposition that the mere giving of collateral security, payable in the future, for a debt already matured, by operation of law, and in the absence of any accessory agreement, has the effect of suspending the right to enforce the payment of such matured debt.     That doctrine I do not think it possible to maintain, for it stands opposed not only by the great weight, but by all of the authorities. This case, when in the court below, was likened to that of *Calvo* v. *Davies, 73 N. Y. 211,* but I can see no similarity between the two, for in the New York case there was an express agreement to extend the time of the payment of the original debt, while in the present case, whether such agreement to postpone such time of payment exists, is the very subject, of inquiry.     I have said that I have found all the decisions opposed to the theory on which the decision in the court of chancery was rested, and I also think that theory contrary to a fair interpretation of the act done by these parties.     The transaction between them was this : The one party gave, and the other party received, a bond conditioned for the payment of these moneys in one year after date, with the understanding that such bond should be collateral to the original bond and mortgage.     Now, in terms, it is declared that this obligation is not to be substitutionary, that is, it is not to take the place of the primary obligation, but is to be collateral to it.     From what circumstance, then, is it to be deduced that such primary obligation is not to be enforced until the collateral obligation falls due ?     It is, indeed, argued that we cannot suppose that the respondent, unless this effect were to ensue, would have taken upon himself this personal covenant ; that he received nothing by it, if the appellant could at once proceed to foreclose the mortgage.     But such a line of observation overlooks the fact that although the obligor in the collateral bond would obtain, from the nature of the transaction, no binding obligation against the immediate enforcement of the mortgage, he nevertheless put things in such a position as to render it extremely unlikely that such a step would be taken, and it is upon such probabilities that human conduct is very commonly founded.

It was the usual course for this insurance company to take these collateral bonds from the purchasers of property on which it held a mortgage lien, and, under ordinary circumstances, it was a natural inference, the required security being given, that the encumbrance would be unenforced indefinitely; in such a situation, it was therefore not surprising that the respondent would give the bond in question without exacting in return an agreement, on the part of the company, to postpone the right to enforce the mortgage, an agreement which such company would not have been likely to enter into, as its obvious effect would have been to discharge the respondent from his responsibility, and otherwise to confuse and impair the securities already in its hands.    These observations are sufficient, I think, to repel the notion that the act of the respondent in giving the bond in question was an absurd act, unless it was accompanied with a stipulation that the prosecution of the mortgage should be stayed.

But even on the assumption that the act of the respondent in this respect was unwise or even foolish, such act must stand, and must be carried by the court to its legal results.    The sole question is, How have the parties agreed; and all we know upon that subject is, that it was the understanding that a collateral bond would be given.    That is the entire agreement.    If they saw fit they might have agreed that all proceedings in the original bond and mortgage should be suspended during the running of the new bond.    But they did not make any special stipulation to this effect, and I have already said that such a stipulation is not to be inferred from the giving of such an instrument.    The decisions forbidding such an inference are numerous, and many of them are collected in the briefs of the counsel of the appellant. From these citations I will refer to one or two cases, with a view to show how strongly the doctrine in question is enforced, and how completely it is considered to be established.    My first reference is to the case of *United States* v. *Hodge, 6 How. (U. S.) 279.*    It was an action on a postmaster's bond, and the defence of the sureties was, that the postmaster, in consequence of his alleged defalcation, in order to secure the government, had given his own mortgage, payable in six months from date.

The question was, whether the mere taking of this instrument suspended the remedy on the bond of the postmaster, and the conclusion of the court was that it did not have that effect. Nothing can be clearer than the judicial statement that the simple giving of collateral security will not, *per se*, have the effect to suspend the right to proceed on the primary security. Thus, Justice McLean, in the opinion read in the case, says: " Payment under the mortgage could not be enforced until after the lapse of six months from its date. And it appears that the mortgage was designed to cover the whole amount of Ker's (the postmaster) defalcation. But the important question is, whether this mortgage suspended the legal remedy of the department on the official bond of the postmaster. There is no provision of the mortgage to this effect. And it cannot be successfully contended that *taking collateral security merely* can suspend the remedy on the bond.    *    *    *    Now, if the post-office department had, by the mortgage, suspended the right of action on the bond for the time limited in the mortgage, it might have released the sureties. But no such condition is expressed and none such can be implied. The mortgage does not purport to be given in lieu of it in discharge of the bond. It is merely a collateral security."

To the same effect, and equally emphatic in its statement of the rule in question, is the decision in the case of *Niemcewicz* v. *Ghan*, *3 Paige 613, 11 Wend. 312.* The facts were these: Mrs. Ghan, to secure a loan to her husband, had joined with him in giving a mortgage on her own land to Mrs. Niemcewicz. Interest falling due, the mortgagee took the husband's note for it, and in a foreclosure Mrs. Gahn set up this extension of time as a defence *pro tanto.* The court overruled this defence, on the ground that the taking of the note did not of itself raise an implication that it was the contract that the remedy on the mortgage was to be deferred. When the case was in the court of appeals, Chief-Justice Nelson, in the plainest terms, entirely repudiated the theory that the acceptance of collateral security raises up any such implication. He says: The note " was collateral to the bond; and if so, it cannot influence the remedy upon the latter (the original bond) without an express agreement to that effect,

which cannot be pretended in this case.   The time when the new
security becomes due does not vary the effect and operation of
it upon the old, as abundantly appears from the above cases.
All of them became due, or could not be enforced until some
time after they were taken; but this circumstance implied no
agreement to postpone the remedy upon the old security.   Those
cases all turned upon the point that no agreement had been made
to forbear in consideration of the new security at the time it was
received, and that *the mere receipt of it did not imply one.*"

The following authorities, taken from the briefs of counsel,
are equally in point, so far as concerns the legal principle under
consideration : *Pring* v. *Clarkson, 1 B. & C. 14; Twopenny* v.
*Young, 3ˑ B. & C. 208; Wyke* v. *Rogers, 1 De G., McN. & G.
408 ; Cary* v. *White, 52 N. Y. 138.*

The cases cited in opposition by the counsel of the respondent
have been examined, but none of them are deemed in point, as not
a single case is presented in which it was held that an accessory
security, admitted to be collateral, operated, by the sheer, intrinsic
force of the act of accepting it, to suspend the right of suit
on the original obligation.

The appellant is entitled to a decree as prayed for.

*Decree unanimously reversed.*