The question is whether complainant has been relieved of liability on a mortgage bond made by her jointly with her husband, Harry Adelman, and his father and mother, Samuel and Sarah Adelman. The bond and mortgage are dated November 2d 1929, and purport to secure $15,000 payable *Page 258 
in one month. The obligee, Percival G. Cruden, acted solely as agent of the Hudson County National Bank, of which he was counsel. Samuel and Harry Adelman were partners doing business under the name of S.M. Adelman Son. The bond and mortgage were given as collateral security for a partnership note for $13,000 held by the bank. The debt was reduced from time to time until July 25th, 1930, when the last $3,500 was paid.
S.M. Adelman Son also had an account with the defendant Franklin Washington Trust Company and borrowed from that institution. On July 24th, 1930, Harry Adelman, on behalf of the firm, borrowed $3,500 from the Trust Company, expressly to pay off the other bank. The loan increased the partnership debt to the defendant to $15,250. When Adelman asked Mr. Ackerson, president of the defendant, for the $3,500, the latter required, as security for the entire indebtedness to the Trust Company, the bond and mortgage which was then held by the Hudson County National Bank. Adelman, of course, was agreeable and Ackerson arranged with the other bank and with Cruden that the bond and mortgage would be forthcoming. Complainant, however, was not consulted and knew nothing of the matter. The proceeds of the $3,500 note were immediately credited to the account of S.M. Adelman Son, the money was transferred to the Hudson County Bank, and its note paid. But before the defendant got the bond and mortgage, there was a long delay, due most likely to summer vacations. Meanwhile, on August 18th, a small note, $250, was paid, leaving the debt $15,000.
Cruden was aware that the note held by his bank, which the bond and mortgage secured, had been paid and that the debtors could demand surrender of the instruments for cancellation. So he not only drew and executed an assignment but, primarily for his own protection, prepared a formal agreement to be executed by the Adelmans and the defendant. On September 11th, 1930, he sent all the papers to defendant, writing, "The assignment and bond and mortgage are handed to you upon the condition that the Adelmans sign the agreement." On September 17th, the partners and their wives called at the Trust Company and signed the paper. Complainant *Page 259 
was unaware that the agreement was being made to carry out an understanding between her husband and Ackerson, reached the previous July. The agreement provides:
"3. The parties of the first part [the four Adelmans] do further agree that upon the assignment of the said mortgage by the party of the third part [Cruden] to the party of the second part [defendant], said party of the second part shall hold the said mortgage as collateral security for the payment of certain note or notes discounted by the party of the second part for the parties of the first part and which at the date hereof aggregate the sum of $15,000. and the party of the second part hereby agrees upon the payment of the indebtedness of the parties of the first part to it amounting to $15,000. and evidenced by said promissory note or notes aggregating said sum, that it will cause to be receipted and cancelled of record, the said mortgage so assigned to it by the party of the third part."
Although in this paragraph there is no mention of the bond at all, but only the mortgage, it seems from the agreement as a whole that this paragraph has the same effect as if it expressly included the bond. The agreement speaks of notes discounted for "the parties of the first part" and the indebtedness of "the parties of the first part." Literally, there were no such notes or debt, but only notes and debt of two of these parties, namely, the two men. The agreement should be construed to refer to them.
The debt was evidenced by three partnership notes, $8,500 due September 16th; $3,000 due September 29th, and $3,500 due November 24th, 1930. On September 19th, Harry Adelman gave two new partnership notes to defendant, $15,000 and $305 (the interest) payable in four months but they were not discounted and credited to the firm account until September 29th. Regardless of their due dates, the old notes were marked paid that day or the following day. The new notes were allowed to remain past due for more than a year, then there were several renewals and a last note, $15,305, was given August 24th, 1933, which is still unpaid and held by defendant. The mortgage has been cut off by foreclosure of a prior lien. The Trust Company has instituted an action at law on the bond.
When the debt to the Hudson County National Bank was paid off in July of 1930, complainant's bond became null and *Page 260 
void. Cruden's assignment, delivered the following September, had of itself no effect, for the bond which it purported to transfer no longer subsisted as an obligation. But the agreement which complainant and the other parties executed at the time the assignment was delivered, revitalized the bond, and at the same time modified its terms. Passaic National Bank, c., Co. v.Owens, 111 N.J. Eq. 486; Ocean County National Bank v.Stillwell, 123 N.J. Eq. 337. The bond, the mortgage, the later agreement, and even the three notes of S.A. Adelman Son, must all be looked to in order to find the entire contract with defendant. Complainant's bond as thus revived was no longer an obligation to pay a certain sum on December 2d 1929, but was conditioned to the payment of the partnership notes on their several due dates. Complainant was not a maker or endorser, or otherwise liable on the notes. Until she put her signature to the agreement on September 17th, she was not liable to the defendant at all. Thereupon, and by virtue of the bond and agreement, she became a guarantor of the partnership notes, or a surety for the debt. The defendant was fully aware that her liability was secondary.
As already pointed out, the notes which were held by defendant on the day when complainant signed the agreement which created her liability, were thereafter marked paid and new notes of S.M. Adelman Son were accepted by defendant in renewal of the old notes. The proofs are clear that complainant was entirely ignorant of these subsequent transactions and never consented to the renewals. But defendant argues that her husband, Harry Adelman, was her agent throughout these transactions and therefore her consent is to be inferred. A husband is not, merely by reason of the marital relationship, an agent of his wife. There is no presumption that he has authority to act on her behalf. State, Brockway v. Mullin, 46 N.J. Law 448; Guenther
v. Moffett, 77 N.J. Law 206. Defendant urges as proof of agency, Mrs. Adelman's testimony that occasionally her husband asked her to sign business papers, for example, the bond and agreement here in suit, and that she always complied with such requests without even reading the papers This does not show that *Page 261 
she empowered her husband to act for her, but rather that she acted for herself upon his advice.
A valid agreement between the principal debtor and his creditor extending for a definite time the payment of the debt, releases guarantors and sureties if made without their consent. The taking of renewal notes is such an extension of the time of payment.Firemen's Insurance Co. v. Wilkinson, 35 N.J. Eq. 160, 175;Burack v. Mayers, 121 N.J. Eq. 135; 122 N.J. Eq. 5; FergusonCarpet Co. v. Schottenfeld, 109 N.J. Law 539.
Complainant has been discharged. Decree accordingly.