Complainant seeks to enjoin the defendants from proceeding with an action in the New Jersey supreme court based upon a contract of indemnity against loss.
The complainant owned premises which, on June 29th, 1922, he conveyed to Lazarus Lemberger, now deceased. At the time of the conveyance, there was of record a mortgage for $10,000 held by the Commercial Trust Company of New Jersey, which subsequently had been reduced to $9,000. The complainant received from the grantee, Lemberger, as part of the consideration, a bond and purchase-money second mortgage in the sum of $19,000 payable in monthly installments *Page 527 
of $100, besides interest, beginning August 1st, 1922, and to continue thereafter until July 1st, 1930, the date of maturity. The further sum of $3,000, in reduction of the principal of the second mortgage, was to be paid on July 1st, 1927. The balance of the principal was to be paid on July 1st, 1930. The second mortgage contained a provision that the mortgagee "will subordinate the lien of this mortgage to the lien of any new first mortgage to be procured by the * * * mortgagor, not exceeding the sum of $9,000; this provision to be binding upon the parties hereto, their heirs, executors, administrators and assigns."
On April 11th, 1923, the complainant assigned the bond and second mortgage to the defendants, Isador Miller and Samuel M. Nadel; and at the same time executed in their favor a contract of indemnity, which, among other things, provided:
"That if the owner or owners of the premises covered by the said mortgage shall default in any of the conditions or covenants contained in said bond and mortgage, or in the prior mortgage on said premises and by reason thereof foreclosure proceedings shall be begun or should legal proceedings be instituted by any one which may affect the validity of or the amount due on said bond and mortgage purchased by said party of the second part, that then and in that event the party of the first part will indemnify and save harmless the said party of the second part of and from any and all loss that may be sustained by the party of second part, it being the intent and purpose of this agreement for the party of the first part to guarantee and the party of the first part does hereby agree to indemnify and save harmless the party of the second part against any deficiency or loss in the event of such legal proceedings of foreclosure or otherwise, and to acknowledge the undertaking on the part of the party of the first part, and he hereby agrees to immediately pay unto the party of the second part the difference between the amount which may be received by said party of the second part upon the said bond and mortgage at said time, together with all court costs, sheriff's fees and legal expenses incurred by the party of the second part.
"The party of the second part in case of such default on its mortgage and before instituting foreclosure proceedings on their part agree to give unto the party of the first part notice of their intended action, by addressing a letter to the party of the first part at his place of residence, in the City of Bayonne, County of Hudson and State of New Jersey, and the party of the first part shall have the right and option of paying unto the party of the second part the moneys due them at the time of such default, upon receipt of which *Page 528 
the party of the second part agrees to assign unto the party of the first part the said bond and mortgage, provided same is paid within thirty days from the time of the mailing of said notice."
At the time of the assignment of the second mortgage, there was due thereon, as principal, the sum of $18,200, with interest from March 1st, 1923; and, also, then in force was the mortgage of the Commercial Trust Company of New Jersey, upon which there was due $9,000. After the assignment of the bond and second mortgage, defaults in the payment of taxes on the mortgaged premises occurred on at least twelve different occasions. Those defaults continued for periods of ninety days or more. There were also defaults, approximating twenty-two in number, in payments of principal on account of the second mortgage; those defaults existed for periods of thirty days, or more.
When the full balance of the principal and interest on the second mortgage became due on July 1st, 1930, it was not paid. It still remains unpaid. A bill to foreclose the second mortgage was filed by the defendants, the assignees of the mortgage, on November 19th, 1935, but the proceeding was never carried to a conclusion. The complainant contends that under the terms of the mortgage, when a default arose, the defendants were charged with the duty of instituting and effecting the foreclosure of their mortgage; and their failure to do so was in derogation of his right. He takes the position that the delay in prosecuting foreclosure proceedings, and the subsequent economic depression followed by an inactive market, reduced the value of the premises and contributed to a weakening of the mortgage security, thus imposing upon him a burden which due care and a proper respect for their obligations by the defendants would have avoided. The complainant states that he had no knowledge of the defaults until he received a letter from the attorney for the defendants dated July 24th, 1934, notifying him "that the mortgage has gone into default."
On May 14th, 1927, the defendants agreed to subordinate, and did subordinate, their second mortgage at the request of the said Lazarus Lemberger and the Commercial Trust Company *Page 529 
of New Jersey, to the lien of a new first mortgage in the sum of $15,000, which was made, executed and delivered by Lemberger and his wife to the Commercial Trust Company on May 19th, 1927. On the last mentioned day, the $9,000 due on the principal of the $10,000 mortgage was paid to the Commercial Trust Company, and that mortgage was canceled of record May 25th, 1927. The complainant says that the agreement to subordinate was made without his knowledge or consent, and is contrary to a provision in the second mortgage, which reads as follows:
"It is agreed between the parties hereto that the said party of the second part (complainant) will subrogate the lien of this mortgage to the lien of any new first mortgage to be procured by the party of the first part (Lazarus Lemberger, mortgagor) notexceeding the sum of $9,000.00; this provision to be binding upon the parties hereto, their heirs, executors, administrators and assigns." (Italics mine.)
In September, 1936, the Commercial Trust Company instituted a proceeding to foreclose the $15,000 mortgage dated May 19th, 1927. These defendants were made parties to that proceeding. Subsequently, a decree was entered, and, on or about April 8th, 1937, a sheriff's sale of the mortgaged premises was had. The bid at the sale was not sufficient to satisfy the Trust Company's mortgage of $15,000, nor the second mortgage of these defendants.
On September 13th, 1937, these defendants instituted their action in the supreme court, Hudson county, charging a breach of the agreement of indemnity against loss. The breach alleged is, that the complainant refuses to pay the defendants their loss on the bond and second mortgage by reason of the foreclosure of the said $15,000 mortgage of the Commercial Trust Company.
Lazarus Lemberger, the mortgagor, in the second mortgage, died intestate on March 23d 1935, leaving a wife and adult children surviving him. Neither Lemberger, in his lifetime, nor the representative of his estate, after his decease, were made a party defendant to the law action. On May 16th, 1938, the surrogate of Hudson county appointed Louis Chodash *Page 530 
administrator of the Lazarus Lemberger estate, and he was made a party defendant in the instant suit.
The complainant argues that if the defendants pursue their law action, judgment may be there entered against him and he, in consequence, will be obliged to institute suit against the Lazarus Lemberger estate, which will entail a multifarious situation, and cause confusion and circuity of action, which this suit will prevent. Howell v. Baker, 106 N.J. Eq. 434;151 Atl. Rep. 117.
It is well settled that covenants of a surety, guarantor, or indemnitor, are to be construed in his favor. That principle had been laid down in many cases, among which may be cited In reQuimby, 84 N.J. Eq. 1; 92 Atl. Rep. 56. In the Quimby Case, Chancellor Walker said:
"The contract of suretyship is construed strictly and the liabilities flowing from it cannot be extended by implication beyond its precise terms and scope. * * * A surety's liability isstrictissimi juris."
See, also, Manufacturers' National Bank v. Dickerson,41 N.J. Law 448; Smith v. Dowden, 92 N.J. Law 317;105 Atl. Rep. 720; Max v. Schlenger, 109 N.J. Law 298; 162 Atl. Rep. 590;Weightman v. Union Trust Co., 208 Pa. 449; 54 Atl. Rep. 879;Ferguson Carpet Co. v. Schottenfeld, 109 N.J. Law 539;162 Atl. Rep. 534.
Paragraph two of the agreement of indemnity discloses that the defendants before instituting foreclosure proceedings on their second mortgage, are required to first notify complainant of their intention to so do "and the" complainant "shall have the right and option of paying unto the" defendants "the moneys due * * * at the time of such default, upon receipt of which the" defendants "agree to assign unto the" complainant "the said bond and second mortgage." Under that provision the complainant has the option to then pay, or he may wait until foreclosure is undertaken; or, until the foreclosure sale establishes a deficiency. Westville Land Co. v. Handle, 112 N.J. Law 447;171 Atl. Rep. 520. In the Westville Land Co. Case, the court, among other things, said: *Page 531 
"There is an essential difference, in legal effect, between covenants of indemnity, strictly — that is, of indemnity against loss — and covenants to pay, or assume or stand for the debt, or a surety's liability thereon. A right of action accrues on those of the latter class as soon as the debt matures and is unpaid, because the liability then becomes absolute, and the failure to pay is a breach of the express terms of the covenant; while those of the former class are not broken, and no right of action accrues, until the indemnitee has suffered a loss against which the covenant runs. * * *
"But * * * the agreement provided indemnity for the loss suffered by reason of a deficiency in the mortgage security, and foreclosure was essential to determine this. * * * Foreclosure is an indispensible requisite * * *."
In the instant case, as has been heretofore observed, there was no foreclosure of the assigned second mortgage.
Were the defendants, Miller and Nadel, after the defaults, obligated to use diligence and reasonable care to realize on the security of their mortgage? I believe they were. Fair dealing demands that consideration. A sale under foreclosure proceedings would either satisfy the mortgage indebtedness, or establish a deficiency. In the Westville Land Co. Case, the court said (atp. 453):
"There is little or no practical difference, in respect of the admeasurement of damages, between a covenant of indemnity against loss, as the result of the non-payment of a debt, and a guaranty of collection. `There is a well understood difference between a guaranty of payment and a contract of indemnity against loss as the result of the non-payment of a debt. In the first case the liability of the guarantor is fixed by the failure of the principal debtor to pay at maturity, or at the time when payment was guaranteed. In the second, the contract partakes of the nature of a guaranty of collection, no liability being incurred until after, by the use of due and reasonable diligence, the guarantee has become unable to collect the debt from the principal debtor.' Burton v. Dewey, 4 Kan. A. 589;46 Pac. Rep. 325." *Page 532 
The defendants obviously "closed their eyes" to what appeared to be a progressive economic depression, and, apparently, were indifferent to the complainant's interests in the situation. Their conduct, in my opinion, was earmarked by neglect and want of care and reasonable diligence. In the circumstances, for the court to place its imprimatur upon their inactivity, in effect, would be to impose an unwarranted penalty upon a helpless and innocent complainant; it would be tantamount to putting "in reverse" an old equitable maxim to read "Equity helps not the vigilant but him who sleeps." McMurray v. Noyes, 72 N.Y. 523;Diamond T. Motor Car Co., Inc., v. Eucker, 10 N.J. Mis. R. 814;160 Atl. Rep. 41. In Wilkinson-Gaddis Co. v. Van Riper,63 N.J. Law 394; 43 Atl. Rep. 675, appears the following:
"One who guarantees the collection only incurs a conditional liability, and the condition is that due diligence has been exercised to collect, of which the guarantor has had notice."
The defendants, I am satisfied should have given prompt notice to complainant of defaults in the terms and conditions of the bond and second mortgage; it would have enabled him to secure his interests. They chose not to inform him. They directly knew the moment when a default took place; but the complainant was without such knowledge; he, necessarily, had to depend upon information or notice. Bashford v. Shaw, 4 Ohio St. Rep. 263. In 28 C.J.979 § 136, it is stated:
"Where the guaranty is conditional, it is generally necessary, as a condition precedent to fixing liability upon the guarantor, that the guarantee make a demand upon the principal obligor for payment or performance, under the terms of the principal contract, within a reasonable time, and give notice of his default, even though he is not bound to proceed against the principal obligor."
Also in 28 C.J. 981 § 138:
"The purpose of giving notice of the principal's default is to inform the guarantor that he is relied upon for payment and to give him an opportunity to take the necessary steps to secure himself against such default, and therefore reasonable notice should be given to him whenever it would be of any advantage to him to have it, in order that *Page 533 
he may, if possible, secure himself against liability. * * * it may be stated that, as a general rule, where the guaranty is a collateral continuing or conditional one, the guarantor is entitled to reasonable notice of the principal's default, unless he expressly or impliedly waives notice, or unless circumstances exist which will excuse the want of notice, or are such that he is not prejudiced by want thereof."
Another point substantially operating against the defendants, is their attitude on the subordination clause in the second mortgage which does not permit a new first mortgage in excess of $9,000. Regardless of the limitation of the "top figure" of $9,000, the defendants subordinated their second mortgage to a new first mortgage in the sum of $15,000. That conduct indicated, in my judgment, a repudiation of the terms of the second mortgage, and a release of liability to the complainant. Consequently, I cannot conceive how under the plain terms of the subordination clause, the complainant can be held responsible for loss to the defendants. When the defendant assignees accepted the second mortgage, they became bound by all of its terms. They were not authorized or empowered to accept some of its provisions and disavow others. They were committed to the instrument in its entirety.
It is said in 50 C.J. 71 § 125, that:
"The liability of a surety is measured by his contract, and * * * is strictly limited to that assumed by its terms, or as the rule is otherwise stated, a surety is not held beyond the terms, or the strict, or the precise, or the clear, or the express terms of his contract; and the surety has the right to stand upon the strict, or precise, or the very terms of his contract; and to rely on the strict letter thereof."
Bloomington Mining Co. v. Searles, 63 N.J. Law 47;42 Atl. Rep. 840; Firemen's Insurance Company of Newark v. Wilkinson,35 N.J. Eq. 160. In this last cited case, Chief-Justice Beasley said (at p. 175):
"The surety has a vested interest in the contract between the primary debtor and the creditor, to the performance of which he has bound himself, and that contract cannot be altered without his consent, so as to affect his equitable or legal position; and if such modification be effected, the consequence *Page 534 
is the exoneration of the surety from all liability. This principle is elementary and indisputable." Manufacturers' Bank
v. Dickerson, supra.
Certainly, the subordination of the second mortgage to a new first mortgage in the sum of $15,000 had the effect of diminishing the value of the security of the second mortgage, in consequence of which, the interests of the complainant were vitally and substantially affected. The principle is clear that a surety, guarantor, indemnitor, is entitled to the benefit of all securities which the creditor holds; and when the creditor voluntarily diminishes the value of the security, the surety, guarantor, indemnitor, is discharged pro tanto. Philadelphia andReading Railroad Co. v. Little, 41 N.J. Eq. 519;7 Atl. Rep. 356; Monroe v. DeForest, 53 N.J. Eq. 264; 31 Atl. Rep. 773; 50C.J. 158 § 259.
I am satisfied the complainant is entitled to the relief he seeks and I shall advise an order to this effect. *Page 535