71 N.J. Super. 110 (1961)
176 A.2d 508
A. ALBERT EICHLER, AS TRUSTEE, PLAINTIFF-RESPONDENT,
v.
THE HILLSIDE NATIONAL BANK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 1961.
Decided December 14, 1961.
*112 Before Judges GOLDMANN, FOLEY and FULOP.
Mr. F.X. McCormick argued the cause for appellant (Messrs. Lindabury, McCormick & Estabrook, attorneys).
Mr. Max L. Rosenstein argued the cause for respondent.
The opinion of the court was delivered by FULOP, J.C.C. (temporarily assigned).
Defendant, the Hillside National Bank (hereinafter referred to as the bank), appeals from a final judgment entered against it in the Law Division, Essex County, in an action in replevin for the return of seven bank passbooks representing deposits of $45,000 and interest, which had been pledged to the bank by the plaintiff to secure loans.
On February 28, 1958, March 25, 1958 and May 15, 1958, Mercury Automatic Fire Alarm Co., Inc., a New Jersey corporation (hereinafter referred to as Mercury), borrowed money from the bank on promissory notes. In order to secure repayment, Mercury assigned to the bank the proceeds of two contracts with the United States Army Engineers for the installation of fire alarm systems and related apparatus. As additional security, Mercury procured Eichler, the present plaintiff, and others to post savings *113 account passbooks representing deposits in the Hillside National Bank approximately equal to the amounts loaned.
The February 28 loan totalled $25,000. It was secured by assignment of the proceeds of Army contract #5677, by plaintiff's passbooks for $20,000, and by other passbooks for $7,500.
The March 25 and May 15 loans aggregated $30,000. These were secured by assignment of the proceeds of Army contract #8160, plaintiff's passbooks for $25,000 and another passbook for $5,000.
The transactions were evidenced by three separate written agreements between Eichler, Mercury and the bank. Eichler is designated as guarantor. The two agreements referring to Army contract #8160 provided that Eichler "does hereby pledge and hypothecate" the saving accounts "as additional collateral to secure to the bank the repayment of said promissory note or notes of the Borrower, or any renewals thereof, and any interest accrued thereon, together with all costs and expenses for collection * * *." The bank was authorized to "charge and deduct from said savings accounts herein pledged any unpaid balance due from the Borrower to the Bank on said promissory note or notes, or renewals thereof * * * in the event said contract shall not be fully performed by the Borrower and accepted" by the Army engineers "or in the event the bank shall not receive the moneys due thereon assigned to it by the Borrower within five months [three months] of the terminal date set forth in said contract."
United States Fidelity and Guaranty Company (hereinafter referred to as U.S.F. & G.) was the surety on performance bonds in connection with both Army contracts. On September 11, 1958 the surety instituted suit in the Chancery Division against Mercury and the bank and others alleging that Mercury had incurred debts for labor and materials for the performance of the Army contracts far in excess of the balances due to Mercury on said contracts and that the surety would be liable therefor as well as for *114 the completion of the contracts. U.S.F. & G. obtained a restraining order against the bank, enjoining it from cashing or using any checks or moneys due or to become due from the United States under the contracts which had been assigned to the bank.
On October 8, 1958 the preliminary restraint was continued except as to one check in the sum of $46,834.71, dated September 22, 1958, issued by the Government with respect to contract #8160 and delivered to the bank as assignee. As to this check Judge Kolovsky, sitting in the Chancery Division, ordered that the bank might negotiate and deposit it "without prejudice, however, as to the rights of the parties to the proceeds of the said check as said rights may ultimately be determined in final hearing of this case." The order further provided that:
"In no event is the sum * * * to be deemed by any person as a payment to the Hillside National Bank on account of the sums due to the Bank upon its loans to defendant Mercury Automatic Fire Alarm Co., Inc., until it is finally determined that the Hillside National Bank is entitled to retain such moneys as its own property in which event it shall be credited as a payment on account of or in satisfaction of said loan as of this date; * * *."
Plaintiff was never joined as a party to the Chancery Division suit. Defendant made a belated motion to consolidate the present action with the Chancery Division action, but the motion was opposed by plaintiff and denied by the court. However, plaintiff knew of the action by or before October 3, 1958. He testified that he procured a transcript of Judge Kolovsky's oral opinion and caused it to be delivered to the Army disbursing office in order to persuade the Army to deliver the above mentioned check to the bank under the terms of the order.
Pursuant to other terms of that order, the bank was ordered to and did pay out $16,000 to George Kesselhaut, as trustee, to be used for the payment of laborers and materialmen on contract #8160. The balance of $30,834.71 has been held in escrow by the bank. In compliance with *115 the order, the bank has not credited any of the money to Mercury's debt nor used any of it as the bank's own money.
We are informed that the Chancery litigation has not yet been concluded. Mercury has been adjudged bankrupt.
At the time when the above mentioned check was received, Mercury was indebted to the bank in the sum of $55,947.17 on the several contracts. Of this sum $30,000 plus interest related to Army contract #8160.
On June 3, 1959 plaintiff demanded the return of all of the passbooks. The demand having been refused, this replevin action was instituted.
The Judge of the Law Division heard the matter without a jury. He determined, and the plaintiff contends, that the injunctive orders in the Chancery Division suit were not binding on the plaintiff because he was not a party to that action, and that these orders were not evidential in the replevin action; that the money received from the Army was a payment to the bank in the sum of $46,834.71; that the bank breached its duty to the plaintiff to apply this sum to the amounts due with respect to contract #8160; that the three transactions constituted a single integrated transaction; that the bank's action impaired the surety's position as to all of the loans and discharged the surety. He concluded that plaintiff was entitled to a return of all the passbooks, or, in lieu thereof, the sum of $45,000 plus interest.
Defendant bank contends that it never received or accepted payment of the sum of $45,834.71 or any part thereof on the indebtedness of Mercury to it; that even though the injunctions are not binding upon the plaintiff, they effectively prevented the bank from receiving the money as payment and, therefore, it breached no legal duty to plaintiff. It also contends that each of the three loan and security transactions was a distinct commercial transaction and even a breach of its duty as to two of the agreements would not affect its rights as to the third. *116 The bank therefore contends that it has the right to retain the pledges until the sums due to it and interest and costs are satisfied.
"Where a pledge is made as security for the obligation of a third party, the pledgor is a surety to the extent of the pledged chattel." Restatement of the Law, Security, § 36. See also § 83(b) and comment; Damler v. Baine, 114 Ind. App. 534, 51 N.E.2d 885 (App. Ct. 1943); 72 C.J.S. Pledges § 1, p. 5; Atlantic Seaboard Co. v. Borough of Seaside Park, 36 N.J. Super. 142, at p. 155 (App. Div. 1955); Jones on Collateral Securities (3d ed.) § 517(a), p. 619. Savings bank books given as security may constitute a pledge. Annotation, 53 A.L.R.2d 1406.
The bank as pledgee owed a duty to the plaintiff to use ordinary care and prudence to preserve the security or funds in its possession or control applicable to the payment of the secured debt. 72 C.J.S. Principal and Surety § 197, p. 664. See Restatement of the Law, Security, § 18 and § 20.
"Where a creditor voluntarily surrenders a security or diminishes its value and the contract by which the surety is bound is not changed, the surety is discharged to the extent he is injured and no further."
Burack v. Mayers, 121 N.J. Eq. 135, 140 (Ch. 1936), affirmed on opinion below, at 122 N.J. Eq. 5 (E. & A. 1937); Stearns, Law of Suretyship (5th ed. 1951), § 6.46.
However, the security or means of satisfaction of the debt must be one in the control of the creditor which he has the right and the power to apply to the debt. Stearns, op. cit., § 6.51; 72 C.J.S. Principal and Surety § 197, p. 665.
"A surety is not discharged by a release of security in which he has no interest, or to which the principal does not have any title, or of which the creditor has no possession or control, or no right to retain, or which he did not accept."
72 C.J.S. Principal and Surety § 204.
*117 Further, the release must be voluntary or the loss of security or satisfaction must be due to fault on the part of the creditor. See City of Newark v. Stout, 52 N.J.L. 35 (Sup. Ct. 1889).
In the present case, the bank never had control of nor the right to retain the money paid over to it under the order of the Chancery Division. It received the money conditionally and in escrow. The receipt of the money was never accepted by the bank as payment. The bank never received the money as its own, available for its use. It has never voluntarily relinquished the money. It has litigated and is still litigating the right to retain the money and to apply it to the debt. There is no evidence that the bank has failed to assert its rights therein for the benefit of the surety.
The delivery of the money to the bank did not constitute payment of the debt because beneficial ownership of the money did not pass to the bank and it did not accept the same in discharge of the debt. See 70 C.J.S. Payment § 1; Union Biscuit Company v. Springfield Grocer Co., 143 Mo. App. 300, 306, 126 S.W. 996, 998 (Ct. App. 1910).
"While the payment of a debt for which another is surety or guarantor exonerates the surety or guarantor, it must be remembered that the payment, to have that effect, must be valid and binding. If, for any reason, the creditor is forced to restore the payment, then the surety's liability will be restored."
Stearns, Law of Suretyship (5th ed. 1951), § 6.54, p. 197.
Accord: Baxter v. Continental Ill. Nat. Bank & Trust Co., 304 Ill. App. 117, 26 N.E.2d 179 (App. Ct. 1940).
"A conditional payment does not discharge the surety on the original indebtedness."
72 C.J.S. Principal and Surety § 139b, p. 629.
See Becker v. Carey, 36 A. 770 (Ch. 1897) (not officially reported), and J. Jacob Shannon & Co. v. Continental Casualty Co., 106 N.J.L. 200 (E. & A. 1930).
*118 Plaintiff cites Boorstein v. Miller, 124 N.J. Eq. 526 (Ch. 1938); Firemen's Insurance Company of Newark v. Wilkinson, 35 N.J. Eq. 160 (E. & A. 1882), and Monmouth Lumber Co. v. Indemnity Ins. Co. of No. America, 21 N.J. 439 (1956), for the proposition that the surety is discharged if the contract between the primary debtor and the creditor is altered or extended without his consent. It should be noted that the plaintiff here expressly consented to remain liable in spite of "any modification, renewal, extension or other change of any kind whatsoever which may hereafter be made in this contract, assignment, promissory note or notes or other documents delivered by the Borrower to the Bank * * *." In the Boorstein case the creditor breached express provisions of the indemnity agreement in addition to voluntarily seriously impairing the underlying security within his control. The cited authorities are not in point.
In addition, plaintiff is estopped from relying upon compliance by the bank with the Chancery Division order. He testified that he procured the delivery of the money to the bank on the strength of Judge Kolovsky's determination. By so doing he acquiesced therein and is estopped by his act. 72 C.J.S. Principal and Surety § 158, § 160a, § 205; Stearns, op. cit., § 6.1, p. 106; Gregory v. Solomon, 19 N.J.L. 112 (Sup. Ct. 1842).
We hold that the sum received by defendant bank from the United States on account of contract #8160 was not received or accepted in payment of the obligation of Mercury for which plaintiff was surety, and that it was not within the control of defendant to apply or not apply it to the indebtedness. Further, that it has not been voluntarily or negligently relinquished by the bank which, so far as appears, is still pursuing legal avenues to secure its application to the said debt. The bank has violated no duty provided by the agreement between the parties or implied in law from the relationship between them. Therefore the *119 passbooks pledged by plaintiff were not discharged in whole or in part as security for the debt which has not been paid.
The three agreements of pledge dated February 28, 1958, March 25, 1958 and May 15, 1958 did not relate to the same transaction. Each was a separate and distinct loan. The security given under the February 28 agreement was a different Army contract and involved different passbooks of the plaintiff and a different additional passbook of a third party from those given with respect to the other two contracts. The money was received entirely on account of Army contract #8160 and the bank clearly had no right to apply any of the proceeds to the loan on contract #5677. The rights of materialmen and laborers and of the surety on the performance bond on contract #5677 could not be affected by a transaction involving an assignment of the proceeds of contract #8160. The authorities cited by plaintiff, which hold that several instruments relating to the same transaction may be treated as a single contract, have no application.
The judgment is reversed to the end that judgment be entered in favor of defendant without prejudice to any action which may hereafter be instituted by either party after the final determination of the action pending in the Chancery Division. The defendant's counterclaim for costs and expenses was not dealt with by the trial court. It is not ripe for determination and will also be dismissed without prejudice.